IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | 2:00-CR-0042(01) |
| | § | |
| CARL DAVID CROWELL | § | |

**REPORT AND RECOMMENDATION
TO DENY MOTION PURSUANT TO 28 U.S.C. § 2255
TO VACATE, SET ASIDE OR CORRECT SENTENCE
BY A PERSON IN FEDERAL CUSTODY**

Defendant CARL DAVID CROWELL has filed with this Court a Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255. For the reasons hereinafter expressed, the undersigned Magistrate Judge is of the opinion defendant is not entitled to relief and recommends the motion to vacate, set aside or correct sentence be DENIED.

I.
FACTUAL SUMMARY

On May 2, 2000, Panhandle Regional Narcotics Trafficking Task Force Agent Tommy Russell stopped a 2000 Buick LeSabre for speeding on Interstate 40 near Amarillo, Texas. Defendant Crowell was a passenger in the car. After the traffic stop, the driver was identified as Floyd Hogner, but the defendant falsely identified himself as Robert Douglas Crowell. A computer check by Agent Russell resulted in information indicating a felony warrant was outstanding for Robert Douglas Crowell. After requesting back-up assistance, defendant Crowell was arrested. Agent Russell asked for and received consent to search the vehicle from the driver, Hogner. The vehicle was searched and approximately 1.984 gross kilograms of methamphetamine was found under the hood area of the vehicle, and 47 gross grams of methamphetamine inside a clear plastic

bag on defendant's person. During questioning, defendant Crowell admitted the methamphetamine was his, that he intended to distribute it, and that Hogner was unaware of its presence. At some point, officers became aware of the defendant's true identity of Carl David Crowell instead of Robert Douglas Crowell.

## II.
## PRIOR COURT PROCEEDINGS

Defendant pled guilty to count 1 of the indictment on November 17, 2000. As part of the plea agreement, defendant Crowell stipulated to the accuracy of the factual resume, acknowledged his plea was freely and voluntarily made, and that he was satisfied with defense counsel. At some point, either at or prior to the plea of guilty, the defense was provided with a copy of the DEA lab report, which set out the quantity, quality, and type of substance tested. Prior to his plea, the District Court advised defendant his range of punishment was ten years to life, and that his case would be subject to the U.S. Sentencing Guidelines.

After the defendant pled guilty, a Pre-Sentence Investigation Report (PSI) was prepared, and sentencing was held on March 1, 2001. After hearing defendant's objections to the PSI, the trial court determined the appropriate sentencing guideline range was 235 months to 293 months based upon a total offense level of 33 and a criminal history category of VI. The district judge sentenced defendant Crowell to the custody of the United States Bureau of Prisons for a term of 235 months and levied the $100.00 mandatory assessment. No fine was assessed. The defendant was also sentenced to a five (5) term of supervised release.

Defendant Crowell directly appealed the sentence alleging two grounds of error. Crowell alleged error because the DEA lab report was admitted even though he had not been able to obtain

an independent chemist to verify the purity levels of the methamphetamine. Defendant also challenged, on hearsay grounds, the admissibility of the DEA lab report at sentencing. The Fifth Circuit affirmed defendant Crowell's sentence on October 25, 2002, in an unpublished opinion.

### III.
### DEFENDANT'S ALLEGATIONS

The defendant appears to raise the following grounds of error in his § 2255 motion:

(1) His guilty plea was not voluntarily entered;

(2) He was denied the effective assistance of counsel;

(3) His conviction was obtained by "the unconstitutional failure of the prosecution to disclose" exculpatory evidence before his guilty plea; and

(4) He was unconstitutionally sentenced in violation of *Blakely v. Washington*, ____ U.S. ____, 124 S.Ct. 2531, 159 L.Ed.2d 403, 72 U.S.L.W. 4546 (June 24, 2004).[1]

The Court has used the language that the defendant "appears to raise" the grounds listed above because the defendant's pleadings have made it difficult to ascertain both the grounds for relief the defendant is presenting and the basis upon which he contends he is entitled to relief. Defendant Crowell did not initially utilize the standard forms required for a motion to vacate, but, instead, submitted a 22-page narrative type motion to dismiss or correct sentence which did not clearly set forth his grounds. That original motion appeared to set forth two grounds for relief:

(1) the ineffectiveness of his counsel; and

(2) the lack of jurisdiction of the court.

Not only did this initial pleading fail to concisely set forth Crowell's claims, it also contained

---

[1] This fourth claim was added by petitioner in a motion to supplement granted by the undersigned on March 24, 2005.

inconsistent allegations. For example, at page 8 of the initial motion, defendant alleges he asked for a jury trial and alleged the government failed to prove all of the elements of the crime. The motion acknowledges, however, that Crowell pled guilty. Similarly, defendant Crowell argues the failure of the indictment to specify the particular type of methamphetamine was an omission of an essential element of the crime which deprived this court of jurisdiction, but defendant also alleged the failure of the indictment to allege a specific type of methamphetamine resulted in "d-methamphetamine" being applicable to his sentencing, rather than actual methamphetamine. Defendant devoted a substantial part of his motion discussing potential *Brady*[2] principles and appears to allege the government violated *Brady*. The motion also spends considerable time discussing *Apprendi*,[3] and contending defendant is entitled to relief pursuant to *Apprendi*, but then fully acknowledges the Supreme Court and several circuits have rejected application of *Apprendi* to the sentencing guidelines.

After this initial motion was submitted, the Court ordered defendant Crowell to resubmit his motion to vacate utilizing the forms approved by the federal courts. Defendant submitted an amended motion on or about December 30, 2002. He did not, however, cure the ambiguities and deficiencies in his original motion. The amended motion merely alleged defendant was entitled to relief on three grounds as follows:

1.  involuntary plea;

2.  indictment's lack of an essential element (isomer), and that his attorney did not argue such issue; and

3.  the government suppressed the type of isomer.

---

[2] *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

[3] *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

Significantly, Crowell did not allege any facts to support any of these three grounds. Instead, he referenced the previously filed 22-page motion to vacate which has been discussed above.

The government's response to the amended motion to vacate characterized defendant's allegations to be that his conviction should be set aside because the government failed to allege and/or prove the substance he possessed was d-methamphetamine rather than l-methamphetamine. The government then argued the distinction between d and l methamphetamine was no longer viable, and provided Fifth Circuit authority to support such argument. The government also stated they had disclosed, by furnishing a copy of the laboratory report to defendant, as well as other documentation, the fact that the methamphetamine at issue was, in fact, d-methamphetamine which had a purity level of 96 to 97 percent.

On March 24, 2003, defendant Crowell filed a response to the government's motion in which he alleged the government had either misunderstood or had purposely avoided addressing the issues he had raised. In that response, defendant Crowell alleged his motion to vacate was based upon an allegation he had pled guilty to possession with intent to distribute methamphetamine, but that his sentence was based on actual methamphetamine, instead of methamphetamine. He also argued the government breached the plea agreement in the case.

On September 22, 2004, defendant Crowell submitted a supplement to his amended motion to vacate arguing his conviction cannot stand in light of the recent Supreme Court decision of *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

Upon review all of the pleadings and submissions by defendant Crowell, the undersigned is of the opinion that defendant Crowell's contention in this case is primarily that the guideline calculation of his base offense level should have been based upon methamphetamine as a mixture rather than pure or actual methamphetamine. Crowell contends this would have resulted in a lower

guideline range. The Court will address this issue below, as well as the merits of each of the four grounds listed on page 3 of this Report and Recommendation as the grounds defendant Crowell appears to be presenting. Based upon defendant's reply to the government's response, it does not appear defendant Crowell is seeking any relief based upon any failure of the government or the Indictment to specify and/or prove that the substance in question was d-methamphetamine as opposed to l-methamphetamine.

## IV.
## PROCEDURAL BAR

Defendant Crowell, represented by counsel, directly appealed his sentence to the Fifth Circuit Court of Appeals, and raised the issue of whether the District Court committed reversible error in admitting the DEA laboratory report at sentencing. In the appeal, Crowell argued the District Court's reliance on the Drug Enforcement Agency (DEA) chemist's report resulted in a seven-year increase in his minimum guideline sentence, and that he was denied due process because he was unable to find an independent chemist with the ability to test the drug's purity, and therefore, could not challenge the DEA chemist's finding. Defendant also argued the DEA report was hearsay, and that the Court erred in admitting the DEA report. The Fifth Circuit disagreed and affirmed the conviction and sentence.

Following a conviction and the exhaustion of or waiver of the right to a direct appeal, a defendant is presumed fairly and finally convicted. *United States v. Shaid*, 937 F.2d 228, 231-32 (5th Cir. 1991) (*en banc*), *cert. denied*, 502 U.S. 1076, 112 S.Ct. 978, 117 L.Ed.2d 141 (1992). As a result, a § 2255 review of a conviction is ordinarily limited to questions of a constitutional or jurisdictional magnitude. These issues ***may not*** be raised for the first on collateral review if they were not raised on direct appeal without a showing of cause and prejudice. Other types of error,

non-constitutional or non-jurisdictional, may not be raised in a § 2255 motion to vacate unless the defendant is able to demonstrate the error could not have been raised on direct appeal and, if condoned, would result in a complete miscarriage of justice. *United States v. Cervantes*, 132 F.3d 1106 (5th Cir. 1998). Claims of ineffective assistance of counsel are ordinarily not presented on direct appeal, but instead are presented in a § 2255 motion. *United States v. Brewster*,137 F.3d 853, 859 (5th Cir. 1998).

Consequently, any ground defendant Crowell presents in this § 2255 motion to vacate other than his allegation of ineffective assistance of counsel is not cognizable because Crowell did not raise such issue on direct appeal, and has failed to show adequate cause for his failure to raise the issue on direct appeal.

## V.
## INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant claims trial counsel was ineffective because counsel failed to object to and/or challenge the fact that the sentence guideline calculations were based upon the amount of "actual methamphetamine," instead of having been based on the overall weight of the methamphetamine.

In order to prevail on a claim that he was denied his constitutional right to the effective assistance of counsel, defendant must satisfy two requirements. "First, he would have to show that his attorney's conduct fell below an objective standard of reasonableness. Second, he would have to demonstrate a reasonable probability that he was prejudiced by his attorney's unprofessional errors." *United States v. Green*, 882 F.2d 999, 1002 (5th Cir. 1989); *see also Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The question of whether a defendant has been subjected to ineffective assistance of counsel is a mixed question of fact and law. *United States v. Rusmisel*, 716 F.2d 301, 304 (5th Cir. 1983).

A showing that his attorney's conduct was deficient requires a "showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. The performance inquiry must center on whether counsel's assistance was reasonable considering all the circumstances at the time of counsel's conduct. *Id*. at 688-690. As for the issue of prejudice, defendant must do more than simply allege prejudice, he must "affirmatively prove" prejudice. *See Bonvillain v. Blackburn*, 780 F.2d 1248, 1253 (5th Cir.), *cert. denied*, 476 U.S. 1143 (1986) (quoting *Strickland*, 466 U.S. at 693).

A habeas defendant claiming ineffective assistance of counsel bears the burden of demonstrating by a preponderance of the evidence "both an identifiable lapse on the part of his trial counsel and some actual, adverse impact upon the fairness of his trial resulting from that lapse." *United States v. Cockrell*, 720 F.2d 1423, 1425 (5th Cir. 1983) (quoting *Boyd v. Estelle*, 693 F.2d 388, 389-90 (5th Cir. 1981)). Counsel is not required to pursue every path until it bears fruit or until all conceivable hope withers. *Lovett v. State of Florida*, 627 F.2d 706, 708 (5th Cir. 1980). A strategy is not proven wrong because, if as is the usual circumstance, a guilty person is convicted. *Cockrell* at 1429; *United States v. Guerra*, 628 F.2d 410, 413 (5th Cir. 1980) (failure to object to the introduction of a letter did not so infect the trial with unfairness as to make the resulting conviction a denial of due process).

There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, and tactical decisions of trial counsel are entitled to a high degree of deference. *Strickland*, 466 U.S. at 692. A defendant must show that counsel's deficient performance prejudiced the defense. *Id*. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. Furthermore, the focus of the prejudice analysis is on whether the result of the

proceeding was fundamentally unfair or unreliable because of counsel's ineffectiveness. *Lockhart v. Fretwell*, 113 S.Ct. 838, 844 (1993).

In this case, it is unnecessary to reach the prejudice stage of defendant's ineffective assistance claim since Crowell has failed to show counsel's performance was deficient. There is nothing counsel could have done which would have prevented the sentence in this case from having been calculated pursuant to the applicable sentencing guidelines, which guidelines called for the methamphetamine calculation to have been done based upon the weight of "actual methamphetamine."

Section 2D1.1(a)(3) of the guidelines[4] provides a base offense level will be determined by using the Drug Quantity Table. The Drug Quantity Table is found at § 2D1.1(c) and provides that if the amount of methamphetamine involved was at least 500 grams, but less than 1.5 kilograms of methamphetamine (actual), then the base offense level is 36. Note (B) to the Drug Quantity Table provides that the term "Methamphetamine (actual)" refers to the weight of controlled substance itself contained in the mixture or substance. Note (13) provides, as an example, that 10 grams of 50% PCP would be calculated as 5 grams of PCP (actual). Finally, *the note provides that the Court should use the base offense level determined by the entire weight of the mixture or substance or the base offense level determined by the weight of the methamphetamine (actual)*, **whichever is greater**. In defendant Crowell's case, the weight of the entire weight of the substance (methamphetamine) was 1.153 kilograms. Guidelines section 2D1.1(c) provides that for 1.153 kilograms of methamphetamine, the base offense level is 32 (at least 500 grams, but less than 1.5 kilograms). The purity level of the methamphetamine in this case, however, was 96.9 percent. This results in a weight of 1.106 kilograms of pure methamphetamine or methamphetamine (actual), which is

---

[4]The November 1, 2000 edition of the Guidelines Manual was used in the sentencing.

determined by multiplying the entire weight of 1.153 kilograms times 96.9 percent.  As set out above, the base offense level for 1.106 kilograms of methamphetamine (actual) is level 36 (at least 500 grams, but less than 1.5 kilograms of methamphetamine (actual).  Therefore, Level 36 is the base offense level which was used in defendant Crowell's sentencing <u>as required by the guidelines</u>, and not Level 32.  As the District Court correctly followed the sentencing guidelines, there was no legal objection available to counsel which could have prevented the based offense level of 36 from being used.

## VI.
## <u>THE VOLUNTARINESS OF DEFENDANT'S PLEA</u>

Defendant Crowell also argues his plea was not voluntarily entered.  Crowell contends he pled guilty to possession with intent to distribute methamphetamine, but was sentenced based upon the weight of "actual methamphetamine."  This claim is without merit.  The District Judge in this case conducted a proper and thorough Rule 11 colloquy with defendant Crowell.  At no time during such colloquy did defendant Crowell make any statement that his plea of guilty was contingent upon his sentencing guideline being based upon the overall weight of "methamphetamine," instead of methamphetamine (actual).  Significantly, other than the objections to the DEA lab report lodged by his counsel, nothing was presented at the sentencing hearing by defendant Crowell that the utilization of the weight of the "actual methamphetamine" in reaching the guideline calculation was error or was contradictory to the plea agreement in the case.

Although Crowell might arguably have a cognizable claim in a motion to vacate if the plea agreement in this case had, in fact, stipulated that his sentence calculation would be based upon the overall weight of the methamphetamine and that, contrary to the sentencing guidelines, the calculation based upon methamphetamine (actual) would not be used, defendant Crowell has

completely failed to show there was any such plea agreement in this case which included such a condition. As defendant Crowell has failed to show there was a plea agreement containing a condition that the sentence would not be based upon the weight of the actual methamphetamine, it serves no purpose to discuss this issue further except to say it is extremely doubtful the government would have entered into any such a plea agreement since it would contradict the guidelines, and it is more doubtful the Court would accept such a plea agreement, which would have called for the Court not to apply the sentencing guidelines provision which requires the calculation of the weight of the controlled substances in a case to be made both on the basis of total weight versus pure weight and the highest base offense level to be used in the sentencing calculation.

Since there was no option available to the sentencing court which would have allowed the judge to ignore the weight of the "actual methamphetamine" and assess a sentence based upon the overall weight only, there is no objection counsel could have made to obtain such a result and counsel cannot be labeled ineffective for failing to obtain the unobtainable. Further, contrary to defendant's argument, there are not two different types of methamphetamine, d versus actual. There is only a difference in the purity, and the only distinction is that a mathematical calculation is made, solely for sentencing purposes, of the purity of the methamphetamine. In this case the purity was quite high, and the result was that the weight of the actual methamphetamine possessed was almost as much as the weight of the total methamphetamine possessed.

Lastly, although defendant has disclaimed any claim for relief based upon a d-methamphetamine versus l-methamphetamine distinction, to the extent defendant argues counsel was ineffective for failing to require the government to produce a laboratory report reflecting whether the methamphetamine possessed by defendant was d-methamphetamine or l-

methamphetamine, any such claim is without merit.[5]  As of November 1, 1995, the distinction between methamphetamine types was eliminated and l-methamphetamine is now treated the same as d-methamphetamine under the Guidelines.  *United States v. Glover*, 97 F.3d 1345, 1347 n.2 (10th Cir. 1996); *United States v. McMullen*, 86 F.3d 135, 138 (8th Cir. 1996).

## VII.
## BLAKELY CLAIM

Finally, defendant challenges his sentence based upon the recent United States Supreme Court decision in *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).  In *Blakely*, the Supreme Court considered a state's sentencing procedure which allowed a state judge to impose a sentence above the offense's statutory maximum punishment upon the judge finding aggravating factors that justify such an upward departure.  In *Blakely*, the state judge determined such factors existed and sentenced the defendant to more than three (3) years above the statutory maximum.  The Court found the facts supporting the state judge's finding were neither admitted by petitioner nor found by a jury.  Noting the jury's verdict alone did not authorize the sentence, the Supreme Court found the state's sentencing procedure did not comply with the Sixth Amendment right to trial by jury.

In *United States v. Pineiro*, 377 F.3d 464, 473 (5th Cir. 2004), the Fifth Circuit considered the impact of *Blakely* on the federal Sentencing Guidelines and held that *Blakely* does not extend, or apply, to the federal Sentencing Guidelines.  *See also United States v. Owen*, 2004 WL 1982394, *1 (5th Cir. Sept. 7, 2004); *United States v. Cuellar,* 2004 WL 1854504, *1 (5th Cir. Aug. 18, 2004).  Therefore, under the law of this circuit, defendant's claim that his sentence, assessed under

---

[5] Defendant does not assert the methamphetamine he possessed was, in fact, l-methamphetamine.  *See defendant's reply to the government's response.*

the federal Sentencing Guidelines, is unconstitutional based upon *Blakely* and, thus, should be vacated, is foreclosed by binding precedent.[6]  Such a claim is not cognizable in a section 2255 action absent an on-point *en banc* decision from the Fifth Circuit or an intervening ruling from the United States Supreme Court.  For the foregoing reasons, defendant has failed to show his sentence was obtained in violation of the Constitution and laws of the United Sates, and has failed to make a substantial showing of the denial of a constitutional right.  Consequently, defendant is not entitled to any relief and his motion to vacate should be denied.

## VIII.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a file-marked copy of this Report and Recommendation to petitioner and to counsel of record for respondent by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this __3rd__ day of January 2006.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

**\* NOTICE OF RIGHT TO OBJECT \***

Any party may object to these proposed findings, conclusions and recommendation.  In the event a party wishes to object, they are hereby NOTIFIED that the deadline for filing objections is

---

[6] *See also United States v. Gentry*, __ F.3d __, 2005 WL 3317891 (5th Cir. December 8, 2005) (holding that *United States v. Booker*, 125 S.Ct. 738 (2005), does not apply retroactively on collateral review on an initial 28 USC § 2255 motion).

eleven (11) days from the date of filing as indicated by the file mark on the first page of this recommendation. Service is complete upon mailing, Fed. R. Civ. P. 5(b), and the parties are allowed a 3-day service by mail extension, Fed. R. Civ. P. 6(e). Therefore, any objections must be filed **on or before the fourteenth (14th) day after this recommendation is filed**. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); R. 4(a)(1) of Miscellaneous Order No. 6, as authorized by Local Rule 3.1, Local Rules of the United States District Courts for the Northern District of Texas.

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).